1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11   F.E.R.,                              Case No. 5:19-cv-01581-SHK
12                         Plaintiff,
13              v.                        OPINION AND ORDER
14   ANDREW M. SAUL, Commissioner of
     Social Security,
15
                          Defendant.
16
17
18        Plaintiff F.E.R.[1] ("Plaintiff") seeks judicial review of the final decision of the
19   Commissioner of the Social Security Administration ("Commissioner,"
20   "Agency," or "Defendant") denying his application for disability insurance
21   benefits ("DIB"), under Title II of the Social Security Act (the "Act").  This
22   Court has jurisdiction under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C.
23   § 636(c), the parties have consented to the jurisdiction of the undersigned United
24   States Magistrate Judge.  For the reasons stated below, the Commissioner's
25   decision is REVERSED and this action is REMANDED for further proceedings
26   consistent with this Order.
27   _____
28   [1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with
     respect to Plaintiff's medical records discussed in this Opinion and Order.

# I.   BACKGROUND

Plaintiff filed an application for DIB on October 5, 2017, alleging disability beginning on January 6, 2016.  Transcript ("Tr.") 227-33.[2]  Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on May 10, 2019, ALJ Robert Lenzini determined that Plaintiff was not disabled.  Tr. 15-29.  Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on July 5, 2019.  Tr. 1-6.  This appeal followed.

# II.   STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).  In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'"  Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted).  A reviewing

---

[2] A certified copy of the Administrative Record was filed on January 23, 2020.  Electronic Case Filing Number ("ECF No.") 14.  Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted).  Finally, a court may not reverse an ALJ's decision if the error is harmless.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III.   DISCUSSION

### A.   Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).  "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a).  Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps."  Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520.  The claimant carries the burden of proof at steps

3

1  one through four, and the Commissioner carries the burden of proof at step five.

2  Tackett, 180 F.3d at 1098.

3       The five steps are:

4            Step 1. Is the claimant presently working in a substantially gainful

5       activity [("SGA")]? If so, then the claimant is "not disabled" within

6       the meaning of the [] Act and is not entitled to [DIB]. If the claimant is

7       not working in a [SGA], then the claimant's case cannot be resolved at

8       step one and the evaluation proceeds to step two. See 20 C.F.R.

9       § 404.1520(b).

10           Step 2. Is the claimant's impairment severe? If not, then the

11      claimant is "not disabled" and is not entitled to [DIB]. If the claimant's

12      impairment is severe, then the claimant's case cannot be resolved at

13      step two and the evaluation proceeds to step three. See 20 C.F.R.

14      § 404.1520(c).

15           Step 3. Does the impairment "meet or equal" one of a list of

16      specific impairments described in the regulations? If so, the claimant is

17      "disabled" and therefore entitled to [DIB]. If the claimant's

18      impairment neither meets nor equals one of the impairments listed in

19      the regulations, then the claimant's case cannot be resolved at step

20      three and the evaluation proceeds to step four. See 20 C.F.R.

21      § 404.1520(d).

22           Step 4. Is the claimant able to do any work that he or she has

23      done in the past? If so, then the claimant is "not disabled" and is not

24      entitled to [DIB]. If the claimant cannot do any work he or she did in

25      the past, then the claimant's case cannot be resolved at step four and

26      the evaluation proceeds to the fifth and final step. See 20 C.F.R.

27      § 404.1520(e).

28  / / /

4

Step 5.  Is the claimant able to do any other work?  If not, then the claimant is "disabled" and therefore entitled to [DIB].  See 20 C.F.R. § 404.1520(f)(1).  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do.  There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB].  See 20 C.F.R. §§ 404.1520(f), 404.1562.  If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB].  See id.

Id. at 1098-99.

**B.  Summary Of ALJ's Findings**

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2020."  Tr. 17.  The ALJ then found at step one, that "[Plaintiff] has not engaged in [SGA] since January 6, 2016, the alleged onset date (20 CFR 404.1571 et seq.)."  Id.  At step two, the ALJ found that "[Plaintiff] has the following severe impairments: degenerative disc disease (DDD) of the lumbar spine, bilateral shoulder arthritis and impingement, tinnitus in the bilateral ears, and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c))."  Id.  At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  Tr. 18.

/ / /

5

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b).  Specifically, [Plaintiff] can lift and/or carry ten pounds frequently, twenty pounds occasionally; he can stand and/or walk for six hours out of an eight-hour workday; he can sit for six hours out of an eight-hour workday; he can occasionally reach overhead bilaterally, kneel, crawl, and climb ladders, ropes and scaffolds; he can frequently reach every way but overhead, push/pull to exertional limits, climb ramps and stairs, balance, stoop, and crouch; he is able to frequently operate a motor vehicle, work a[t] unprotected heights, be exposed to extreme cold and vibration, and work with dangerous equipment or machines; he is able to perform simple, routine tasks, should not be responsible for the safety of others, and adapt to routine changes in a low stress environment; and he can occasionally interact with supervisors and coworkers with no direct interaction with the general public and do no teamwork.

Tr. 20.  The ALJ then found, at step four, that "[Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565)."  Tr. 28.

In preparation for step five, the ALJ noted that "[Plaintiff] was born on December 22, 1966 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  [Plaintiff] subsequently changed age category to closely approaching advance age (20 CFR 404.1563)."  Id.  The ALJ observed that "[Plaintiff] had at least a high school education and is able to communicate in English (20 CFR 404.1564)."  Id.  The ALJ then added that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)."  Id.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569a)." Id. Specifically, the ALJ found that Plaintiff could perform the "light, unskilled" occupations of "inspector, hand packager" as defined in the dictionary of occupational titles ("DOT") at DOT 559.687-074, "small products assembler II," at DOT 739.687-030, and "routing clerk," as defined at DOT 222.687-022. Tr. 29. The ALJ based his decision that Plaintiff could perform the aforementioned occupations "on the testimony of the [VE]" from the administrative hearing, after "determin[ing] that the [VE's] testimony [wa]s consistent with the information contained in the [DOT]." Id.

After finding that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy[,]" the ALJ concluded that "[a] finding of not disabled is . . . appropriate under the framework of the above-cited rules." Id. (internal quotation marks omitted). The ALJ, therefore, found that "[Plaintiff] has not been under a disability, as defined in the . . . Act, from January 6, 2016, through [May 10, 2019], the date of th[e] decision (20 CFR 404.1520(g))." Id.

**C.** **Issues Presented**

In this appeal, Plaintiff raises two issues with the ALJ's decision. Specifically, whether the ALJ erred by not properly considering: (1) "Plaintiff's subjective statements of record and testimony under oath regarding his impairments, symptoms, and limitations in the assessment of Plaintiff's [RFC]"; and (2) "the relevant medical evidence of record in assessing Plaintiff's [RFC]." ECF No. 19, Joint Stip. at 4.

/ / /

/ / /

/ / /

7

**D.**   <u>**Plaintiff's Subjective Statements of Record and Testimony**</u>

    **1.**   **Parties' Arguments**

Plaintiff argues that the ALJ "failed to specify which statements by Plaintiff concerning pain, functional limitations, and other symptoms were not 'sufficiently credible.'" <u>Id.</u> at 17. Plaintiff argues that the ALJ erred by "failing to properly consider Plaintiff's subjective statements and testimony under oath regarding his symptoms and limitations, especially in light of the [VE's] testimony . . . that an individual who could only persist at work activity 35 hours per week would be incapable of performing any full time occupations." <u>Id.</u> at 19 (citing Tr. 82). Plaintiff also asserts that the ALJ erred by failing to consider his 100 percent disability rating by the Department of Veteran's Affairs ("VA"). <u>Id.</u> at 5.

Defendant responds that "Plaintiff's subjective testimony is not wholly supported by the record, as the ALJ correctly found." <u>Id.</u> at 19. Defendant argues that "[t]he ALJ properly evaluated Plaintiff's testimony and found it not entirely supported based on the totality of the evidence, including the various treatment records and doctors' opinion[s] that did not wholly support his allegations." <u>Id.</u> at 23. Defendant asserts that because "Plaintiff fail[ed] to identify harmful legal error with the ALJ's evaluation of his testimony[,]" the ALJ's decision "is supported by substantial evidence and must be affirmed." <u>Id.</u> Defendant adds that "while the ALJ did not directly address Plaintiff's [VA disability] rating, Plaintiff cannot reasonably argue that the ALJ failed to consider the underlying VA records when formulating the RFC." <u>Id.</u> at 13 (citing 20 C.F.R. § 404.1504).

    **2.**   **ALJ's Consideration Of Plaintiff's Symptom Statements**

The ALJ began his analysis of Plaintiff's symptom statements by noting that: [Plaintiff] alleged he was disabled due to a removed brain tumor, depression, PTSD, anxiety, [traumatic brain injury ("TBI")], herniated discs in the lower back, plantar fasciitis, past shoulder injury, hearing loss, sleep apnea and acid reflux disease. [Plaintiff] testified he

can still see the incident where he got his head injury, and he wakes up screaming and swinging at his wife when she tries to wake him up[] and does not remember anything.  He described not being able to have his back to windows or doors, and if he does not clearly see the entrance and exit, he will not enter a room.  He stated he rarely goes in public, and extended family does not visit because they say he is always angry.  He explained he has two low back herniated discs, painful sciatica, and a pinched nerve in his side; physical therapy did not help and [a] neurologist recommended he does not have surgery.  He indicated he uses a cane and hearing aids only when he goes out.

Tr. 21 (citation omitted).

After discussing Plaintiff's symptom related statements, the ALJ then found that Plaintiff's "statements about the alleged intensity, persistence, and limiting effects of [his] symptoms are inconsistent with the objective medical evidence because those allegations are greater than expected in light of the objective evidence of record." Id.  The ALJ added that "[e]ven if [Plaintiff's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [Plaintiff's] medical condition, in view of the relatively benign medical evidence[.]" Id.

The ALJ found that "[d]espite [Plaintiff's] alleged impairment, [he] has engaged in a somewhat normal level of daily activity and interaction." Id.  The ALJ observed that Plaintiff's "admitted [ADLs] include[e] [that] he prepares coffee, takes the dog out, and gardens." Id.  The ALJ also observed that "[i]n a function report, [Plaintiff] acknowledged he lives with family, does house chores, watches television, feeds[,] bathes[,] and walks the dog, has no problem with hygiene and dressing, washes dishes, vacuums, does some repairs, mows, takes out the trash, drives, shops in stores and by phone, coaches kids in baseball and soccer, and can follow short instructions." Id. (citing Tr. 279-87).  The ALJ added that

Plaintiff "reported he was going to the gym and using the treadmill, stationary bike, and sauna, and he walked to soccer practice." Id. (citing Tr. 1440).  The ALJ also added that Plaintiff "admitted to [a doctor] he does what needs to be done when he feels okay; he is able to bathe and dress himself without help, and he does household chores." Id. (citing Tr. 2548-49).  The ALJ found that "[t]hese activities reflect a significant functional capacity and not an individual unable to sustain regular and continuing work due to medically determinable impairments." Id.

The ALJ next found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 22.  The ALJ added that with respect to "the medical evidence, the objective findings in this case fail to provide strong support for [Plaintiff's] allegations of disabling symptoms and limitations.  More specifically, the medical findings do not support the existence of limitations greater than those reported above." Id.  The ALJ also added that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual and [Plaintiff's] alleged loss of function is not supported by objective medical findings." Id.  The ALJ then added that he "read and considered all the medical evidence in the record" and found that "[t]he treatment records reveal that [Plaintiff] received routine, conservative and non-emergency treatment since the alleged onset date." Id. (citing Tr. 345-2529).

The ALJ then discussed Plaintiff's medical records relating to Plaintiff's physical and mental impairments and, with respect to Plaintiff's physical limitations, found that "[a]lthough Plaintiff is likely to have some pain and limitations, the records . . . do not support the extent [of the limitations that Plaintiff] has alleged.  He has a significant ability to stand, walk, lift, and carry,

based on the objective physical examinations, . . . which show only mild to moderate findings."  Tr. 22-25.

With respect to Plaintiff's mental limitations, the ALJ noted that Plaintiff "had many negative and normal mental status findings throughout the record" and, that Plaintiff had "good tolerance to his present medication without any side effects on July 26, 2018."  Id. (citation omitted).  The ALJ found that:

> [a]lthough [Plaintiff] is likely to have some mental limitations, the records . . . do not support the extent [Plaintiff] has alleged.  He has had very consistent and unremarkable mental treatment[] and was still able to do coaching and drive.  In addition, he has a significant ability to focus and concentrate, do [ADLs], and get along with others, . . . which show no more than mild objective findings.

Tr. 25.

### 3.    Standard To Review Plaintiff's Symptom Related Statements

When a claimant has medically documented impairments that "might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying 'which testimony [the ALJ] found not credible' and explaining 'which evidence contradicted that testimony.'"  Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017) (emphasis in original) (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 489, 494 (9th Cir. 2015).  "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'"  Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

"The ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct."  Molina v. Astrue, 674 F.3d

1104, 1112 (9th Cir. 2012).  Also, while an ALJ cannot reject the severity of
subjective complaints solely on the lack of objective evidence, the ALJ may
nonetheless look to the medical record for inconsistencies.  See Morgan v. Comm'r
Soc. Sec. Admin., 169 F.3d 595, 599-600 (9th Cir. 1999) (finding that "[t]he ALJ
provided clear and convincing reasons for rejecting [Plaintiff's] testimony" by
"point[ing] to specific evidence in the record—including reports by [Plaintiff's
doctors]—in identifying what testimony was not credible and what evidence
undermined [Plaintiff's] complaints.").

**4.    ALJ's Decision Is Not Supported By Substantial Evidence**

Here, the ALJ provided two reasons for rejecting Plaintiff's symptom
statements: (1) inconsistency between Plaintiff's symptom statements and his
ADLs, which the ALJ found "reflect a significant functional capacity"; and (2)
inconsistency between Plaintiff's symptom statements and "the medical evidence
and other evidence in the record."  Tr. 21-22.  Neither reason was supported by
substantial evidence in the record because, in pertinent part, the ALJ selectively
relied on only some evidence in the record while ignoring evidence that supports
Plaintiff's statements.  See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir.
2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records
while ignoring others).

*a.      Plaintiff's ADLs Were Not A Clear And Convincing Reason*
*To Reject Plaintiff's Symptom Statements.*

With respect to the ALJ's first reason for rejecting Plaintiff's symptom
statements—that Plaintiff's ADLs "reflect a significant functional capacity"—this
finding is not supported by substantial evidence because it ignores evidence in the
record of Plaintiff's limited ability to perform many of the ADLs cited by the ALJ.
Tr. 21; Holohan, 246 F.3d at 1207-08.  Moreover, when the evidence discussed
below, which the ALJ ignored, is considered, Plaintiff's ADLs appear to be
consistent with his stated limitations.  See Reddick v. Chater, 157 F.3d 715, 722

(9th Cir. 1998) ("Only if the level of activity were inconsistent with [c]laimant's claimed limitations would these activities have any bearing on [c]laimant's credibility" and "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); see also Molina, 674 F.3d at 1112-13 ("a claimant need not vegetate in a dark room in order to be eligible for benefits") (citation and internal quotation marks omitted).

Further, the Ninth Circuit "'has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from h[is] credibility as to h[is] overall disability.'" Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). It is only when a "claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, [that] a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

For example, the ALJ noted that Plaintiff "has no problem with hygiene and dressing[,]" however, in the function report cited by the ALJ in support of this proposition, Plaintiff noted that he requires "special reminders to take care of personal needs and grooming[,]" including using a calendar, his cellular phone, and receiving reminders from his wife to complete personal care and grooming tasks. Tr. 21, 281. Further, one psychiatric examiner indicated that Plaintiff presented to his examination "poorly groomed with [an] unshaven beard." Tr. 2547. Moreover, although the ALJ noted that Plaintiff "admitted to [a doctor] . . . he is able to bathe and dress himself without help," Tr. 21 (citing Tr. 2548-49) (emphasis added), an inspection of the record cited by the ALJ reveals that Plaintiff's doctor indicated that Plaintiff "is able to bathe and dress himself with help," Tr. 2549 (emphasis added).

Thus, because the ALJ's finding ignores or misstates the aforementioned evidence, the Court finds that Plaintiff's hygiene and dressing capabilities were not clear and convincing reasons supported by substantial evidence to reject Plaintiff's statements. See Holohan, 246 F.3d at 1207-08. Moreover, it is unclear how basic hygiene and dressing indicates a "significant functional capacity" as the ALJ found or indicates an ability to spend a substantial party of Plaintiff's day engaged in pursuits that are transferrable to a work setting. Tr. 21; Orn, 495 F.3d at 639; Vertigan, 260 F.3d at 1050. On remand, the ALJ shall clarify these points.

Similarly, while Plaintiff indicated that he can do house chores as the ALJ noted, Plaintiff also indicated that he "need[s] to be reminded" to do chores, and that chores take him "a long time if [he] remember[s] [to do them] or [is] reminded to do so." Tr. 21, 281 (capitalization normalized). Thus, because the ALJ failed to consider or discuss this evidence that Plaintiff can do chores only at a slow pace and when reminded to do so, it does not appear that Plaintiff's ability to do chores in this limited capacity and with reminders "reflect[s] a significant functional capacity" as the ALJ found, or an ability to spend a substantial part of Plaintiff's day engaged in pursuits that are transferrable to a work setting. Tr. 21; Holohan, 246 F.3d at 1207-08; Orn, 495 F.3d at 639; Vertigan, 260 F.3d at 1050. The ALJ shall clarify this point on remand as well.

Moreover, while Plaintiff indicated that he does care for a dog as the ALJ noted, Plaintiff also indicated that the dog he cares for is his "service dog" and that "he's a small dog . . . [l]ike Toto from the Wizard of Oz" that "doesn't even chase a ball because he was trained to just let [Plaintiff] know when [he is] angry" by scratching Plaintiff's leg. Tr. 21, 64, 280; see also Tr. 45-46 (psychological examiner noting that a nurse practitioner from the VA hospital "recommend an emotional support animal" for Plaintiff's anxiety). The record also indicates the Plaintiff "walk[s] the service dog if possible." Tr. 2549. Thus, Plaintiff's ability to care for his small service animal, which he walks if possible and that doesn't even

chase a ball, does not on its face appear to indicate that Plaintiff has a "significant functional capacity" to perform ADLs in excess of what Plaintiff stated he could perform.  As such, Plaintiff's care for his service animal was not a clear and convincing reason to reject Plaintiff's testimony and also requires clarification by the ALJ on remand.

With respect to Plaintiff's ability to shop, Plaintiff indicated that it takes him a "long time" to shop and that when he goes out to shop, he does not shop alone and, instead, reportedly requires his wife's "company" or "supervision."  Tr. 282. Moreover, Plaintiff added that he cannot use a checkbook, and his ability to handle money has changed since his alleged onset date because he "can't concentrate or stay focus[ed]."  Tr. 282-83.  Finally, Plaintiff indicated that his wife usually goes to the store "on her own" and if Plaintiff is needed, and only "[i]f [he] feel[s] good that day," Plaintiff will go with his wife to the store, but Plaintiff stated that he prefers to not go to the store due to his impairments.  Tr. 73.  Thus, Plaintiff's ability to shop in such a limited way does not appear to "reflect a significant functional capacity" to perform ADLs beyond Plaintiff's stated abilities.  Tr. 21; Reddick, 157 F.3d at 722.  On remand, the ALJ shall clarify how Plaintiff's ability to shop slowly, infrequently, and with a limited capability to handle money translates to a significant functional capacity to perform ADLs beyond Plaintiff's stated abilities.

With respect to Plaintiff's ability to coach his kids in baseball and soccer, Plaintiff indicated that he "can only do 1.5 hours of training with the kids, [and] before it was unlimited[,]" that he only coaches three days per week now, and that he is now accompanied by a "team manager[,]" a "team parent[,]" and a "team treasurer" when coaching.  Tr. 283.  Plaintiff also indicated that he attempted to coach "a softball team for [his] high school" but that he "didn't last for two weeks . . . [before] [t]hey got rid of [him]" after the incident was reported to the school because he "went after" a parent who "came at [him]."  Tr. 39, 61.  Thus, when

the Court considers this evidence, which the ALJ did not consider or discuss, that Plaintiff coached at a reduced capacity, with the help of three other adults and for less than five hours per week in one instance, and that Plaintiff was fired in less than two weeks after going after a parent in another instance, the Court finds that Plaintiff's ability to coach on such limited and unsuccessful bases does not "reflect a significant functional capacity" beyond Plaintiff's stated abilities.  Tr. 21.

On remand, the ALJ shall explain how Plaintiff's ability to coach in the limited capacity described above translates to a "significant functional capacity" to perform ADLs beyond Plaintiff's stated abilities, and an ability to spend a substantial part of his day engaged in pursuits involving the performance of functions that are transferable to a work setting.  Tr. 21; Fair, 885 F.2d at 603. Additionally, the ALJ shall specifically state how Plaintiff's RFC to "occasionally interact with supervisors and coworkers" is supported by substantial evidence in the record despite the evidence the ALJ did not discuss here: Plaintiff getting fired less than two weeks into a coaching job for going after a parent.  Tr. 20, 39, 61.

Next, while Plaintiff indicated at the administrative hearing that he can make coffee as the ALJ observed, it does not appear that Plaintiff is able to prepare anything besides coffee.  Specifically, Plaintiff indicated, and the ALJ failed to note, that Plaintiff "ha[s] burnt food before [and he] forget[s] lots of things[,]" that he no longer cooks "at all . . . any more because [he] forget[s] [w]hat [he is] doing and [he] get[s] distracted easily."  Tr. 280.  It is unclear how Plaintiff's ability to make only coffee and no other food or drinks "reflect[s] a significant functional capacity" as the ALJ found.  Tr. 21.  Thus, the Court finds that Plaintiff's ability to make only coffee and no other food or drink items was not a clear and convincing reason to reject Plaintiff's symptom statements.  On remand, the ALJ shall clarify this finding.

With respect to Plaintiff's ability to go the gym, exercise, and walk to soccer practice, the ALJ failed to consider or discuss evidence that Plaintiff's doctor

indicated he was "promoting diet and regular physical activity within limits" and that Plaintiff consequently "increased his level of exercise, though [wa]s limited by pain." Tr. 1439-40 (emphasis added). Moreover, the ALJ did not consider that Plaintiff's doctor indicated that Plaintiff "uses the treadmill, stationary bike, and sauna, within his limitations" and that Plaintiff's "previous goal to ride [a bicycle] to soccer practice was unsuccessful due to pain, however, [Plaintiff] substituted walking instead of driving." Tr. 1439 (emphasis added).

The record also reveals that Plaintiff walked to his kids' soccer practice because he was unable to ride a bike to practice due to pain, and that Plaintiff had difficulty driving due to anger issues. See Tr. 59 (Plaintiff testifying that he no longer drives "because anybody cuts [him] off" and he "want[s] to go get them."); see also Tr. 2547 (Plaintiff's medical chart notes indicating that Plaintiff was driven to his appointment by his wife).

Therefore, the ALJ focused on Plaintiff's ability to walk somewhere, rather than considering or discussing evidence of Plaintiff's inability to bike due to pain or to drive due to anger issues. The ALJ's failure to consider Plaintiff's inability to drive due to anger issues is material here because the record indicates that Plaintiff is a combat veteran with a 100 percent VA disability rating, in part, due to Plaintiff's PTSD, and, critically, the ALJ found that Plaintiff retains the RFC to "occasionally interact with supervisors and coworkers" despite his PTSD symptoms. Tr. 20; see also Tr. 40, 45, 67-68 (Plaintiff testifying at the hearing that he "was [in] combat arms" in both his primary military occupations until "they moved [him] over to recruiting command . . . due to the artillery and all the noise and flashbacks[,]" and until he was honorably discharged with a "100 percent service-connected disability"); Tr. 2064 (VA records indicating Plaintiff's 100 percent disability rating). Notably, as the Court will discuss more in the next section, the ALJ also did not consider or discuss Plaintiff's 100 percent disability rating through the VA.

1    Accordingly, as discussed previously, Plaintiff's ability to exercise and walk

2 to his kids' soccer practice was not a clear and convincing reason to reject

3 Plaintiff's statements.  On remand, the ALJ shall consider and discuss the pain and

4 anger related evidence.

5    For the foregoing reasons, Plaintiff's ADLs were not a clear and convincing

6 reason for rejecting Plaintiff's symptom statements.

7                    *b.*    *Other Evidence Was Not A Clear And Convincing Reason*

8                           *To Reject Plaintiff's Symptom Related Statements.*

9    The Court finds that the second reason given by the ALJ for rejecting

10 Plaintiff's statements—that they were inconsistent with "the medical evidence and

11 other evidence in the record" and the "routine, conservative and non-emergency

12 treatment [Plaintiff received] since the alleged onset date"—also was not a clear

13 and convincing reason for rejecting Plaintiff's symptom related statements.  This is

14 because the ALJ discussed only select evidence that supported the ALJ's rejection

15 of Plaintiff's symptom related statements, while ignoring other evidence that

16 supported Plaintiff's stated limitations.  Tr. 21-22; see also Holohan, 246 F.3d at

17 1207-08.

18    For example, the ALJ found that Plaintiff's mental impairments are not as

19 severe as Plaintiff alleged, in part, because Plaintiff "was still able to do coaching

20 and drive[,] do [ADLs], and get along with others."  Tr. 25.  This finding, however,

21 ignores the above discussed evidence that: (1) Plaintiff's ADLs were not as robust

22 as the ALJ found; (2) Plaintiff's ability to coach was limited to coaching less than

23 five hours per week with the help of three other adults in one instance and Plaintiff

24 being fired from one coaching job in less than two weeks because he "went after" a

25 parent, which indicates an inability to get along with others, in the other instance;

26 and (3) Plaintiff did not drive at times due to anger issues, which also suggests an

27 inability to get along with others.  Tr. 39, 59, 61, 283, 2547 (emphasis added).

28

1    Critically, the evidence of Plaintiff's inability to get along with others is

2    material here because this evidence undercuts the ALJ's RFC finding that Plaintiff

3    retained the RFC to "occasionally interact with supervisors and coworkers."  Tr.

4    20.

5    The RFC is the maximum a claimant can do despite her limitations.  20

6    C.F.R. § 404.1545.  In determining the RFC, an ALJ must consider limitations

7    imposed by all of a claimant's impairments, even those that are not severe, and

8    evaluate all of the relevant medical and other evidence, including the claimant's

9    testimony.  SSR 96-8p, available at 1996 WL 374184 (July 2, 1996).

10   Here, the ALJ erred by failing to evaluate all the relevant evidence in the

11   record—including Plaintiff's testimony and the evidence that supports Plaintiff's

12   testimony that he struggles to get along with others—when formulating Plaintiff's

13   RFC.  This error was not harmless because the ALJ's RFC finding is contrary to

14   some of Plaintiff's stated limitations that the ALJ improperly rejected.  Specifically,

15   Plaintiff's RFC to "occasionally interact with supervisors and coworkers" is

16   severely undercut by Plaintiff's anger issues that manifested in Plaintiff getting

17   fired from a coaching job in less than two weeks and Plaintiff not being able to drive

18   at times.

19   Accordingly, because the ALJ's RFC finding is not supported by substantial

20   evidence, neither was: (1) the hypothetical question posed to the VE at the hearing

21   that was based on the ALJ's unsupported RFC finding; (2) the VE's testimony

22   regarding the occupations someone with the unsupported RFC could perform; or

23   (3) the ALJ's step five finding that was based "on the testimony of the [VE]" from

24   the administrative hearing.  Tr. 79; see Osenbrock v. Apfel, 240 F.3d 1157, 1163-65

25   (9th Cir. 2001) (limitations supported by substantial evidence in the record must be

26   incorporated into the RFC and, by extension, the dispositive hypothetical question

27   posed to the VE).  On remand, the ALJ shall specifically consider and discuss the

28   aforementioned evidence of Plaintiff's anger issues and describe how Plaintiff's

ability to "occasionally interact with supervisors and coworkers" is not impaired by Plaintiff's anger issues.

However, even though the ALJ's RFC finding and step five finding fail such that remand for further proceedings is appropriate here, before concluding, at least two other pieces of evidence must be discussed so that the ALJ may evaluate them on remand as well.

First, the ALJ's observation that Plaintiff had "good tolerance to his present medication without any side effects on July 26, 2018[,]" Tr. 24, which the ALJ cited for the proposition that Plaintiff's limitations are not as great as Plaintiff alleges, ignores multiple notations in the record of side effects caused by Plaintiff's medications. See Tr. 59 (Plaintiff testifying that Duloxetine "puts [him] out" for four to five hours and he wakes up wondering "what happened?"); Tr. 64 (Plaintiff testifying that he has increasingly been prescribed "more medication" to treat his symptoms and now sleeps most of the day); Tr. 286 (Plaintiff indicating that "all [his] medications have side effects"); Tr. 317, 326 (Plaintiff's disability report indicating that Cymbalta, which Plaintiff takes for depression and anxiety, makes Plaintiff drowsy). This evidence that the ALJ failed to consider or discuss, reveals that Plaintiff's abilities were likely limited by the side effects of his medications. Specifically, it is unclear how Plaintiff can maintain substantial gainful employment if his medication makes him sleep for four to five hours per day. On remand, the ALJ shall consider and discuss this evidence and specifically articulate how Plaintiff is able to work despite the side effects caused by his medication.

Finally, as noted above, the ALJ failed to consider or discuss in the decision, evidence that Plaintiff was found to be 100 percent disabled by the VA. Tr. 46, 66, 2064, 2548-49. This was not a harmless error because the ALJ needed to provide persuasive, specific, valid reasons for rejecting the VA's disability rating. See McCartney v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) (The Ninth Circuit "agree[d] with all of the other circuits that have considered the question and hold

that although a VA rating of disability does not necessarily compel the SSA to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in reaching his decision[]" and "an ALJ must ordinarily give great weight to a VA determination of disability . . . because of the marked similarity between these two federal disability programs."  However, "[b]ecause the VA and SSA criteria for determining disability are not identical, . . .the ALJ may give less weight to a VA disability rating if [the ALJ] gives persuasive, specific, valid reasons for doing so that are supported by the record.").  Because the ALJ failed to consider discuss Plaintiff's 100 percent disability rating from the VA in the decision, much less provide persuasive, specific, valid reasons supported by substantial evidence for rejecting the VA's disability rating, the ALJ must consider and discuss this evidence on remand as well.

For the foregoing reasons, the medical and other evidence in the record was not a valid reason for rejecting Plaintiff's symptom statements.  Accordingly, because neither of the reasons provided by the ALJ for rejecting Plaintiff's symptom statements were clear and convincing, and because the ALJ's RFC and step five findings were not supported by substantial evidence in the record, the ALJ's decision was not supported by substantial evidence in the record.

## IV.   CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  See Garrison, 759 F.3d at 1009 (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have

/ / /

/ / /

/ / /

/ / /

21

power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing.") (citation and internal quotation marks omitted).

       IT IS SO ORDERED.

DATED:  7/28/2020

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge